**In Re: NENG NHIA YI LY, Petitioner,**

v.

**Viviane HEU, Respondent.**

**No. CIV. 03–3415DSDSRN.**

United States District Court,
D. Minnesota.

Dec. 1, 2003.

Patrick H. Stiehm, Esq., Stiehm Law Office, Alexandria, VA, counsel for petitioner.

Margaret J. Gustafson, Baker Court, St. Paul, MN, counsel for respondent.

## ORDER

DOTY, District Judge.

## INTRODUCTION

This is an action under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610, for the return of Sandie Nhia Yi Ly, a minor child. The action is brought by Sandie's father, Neng Nhia Yi Ly, a citizen of France, against Sandie's mother, Viviane Heu.[1] This matter came on for trial on September 19 and November 3, 2003. After two days of trial, testimony and argument, the receipt of a comprehensive stipulation of facts, exhibits

---

1. Viviane Heu is also known by her married    name, Viviane Yang.

and post-trial briefs, the court makes the following:

## FINDINGS OF FACT

1. Petitioner Neng Nhia Yi Li and respondent Viviane Heu were married in a traditional Hmong ceremony in France during the Spring of 1995. Petitioner and respondent were married in a French civil ceremony on February 17, 1996, in Saint–Thibault des Vignes, France.

2. Sandie Nhia Yi Ly ("Sandie") was born in France on February 20, 1996, and is the marital issue of petitioner and respondent.

3. Petitioner and respondent separated in February 1997.

4. Respondent filed a petition for divorce in the French courts at Montargis, France, on May 2, 1997. Petitioner counter-claimed for divorce in that action.

5. In a judgment rendered April 1, 1998, the French court dissolved the marriage of petitioner and respondent and entered certain orders with regard to Sandie on the issues of custody, visitation and child support. A written memorialization of that judgment, along with its English translation, was received at the trial of this matter. The memorialization is a true, accurate and complete record of the actions of the French court regarding the divorce of petitioner and respondent.

6. The court credits the affidavit testimony of Juliette Minot and Alexandre Boiche regarding the legal effect of the French court's judgment under French law.

7. After petitioner and respondent separated, Sandie resided with respondent at the home of respondent's parents in France.

8. Following the separation, Sandie usually visited petitioner every other weekend and on some holidays. Petitioner missed some visits due to illness.

9. In September 1999, respondent and Sandie left France and came to Saint Paul, Minnesota, where they currently reside. Sandie has lived in Saint Paul continuously since her arrival in the United States.

10. Respondent married Ray Yang in Saint Paul, Minnesota, on July 7, 2000.

11. The marriage of respondent and Ray Yang has produced two children: Tara, a daughter, born May 9, 2002, and Joshua, a son, born August 22, 2003.

12. Sandie has a good, close relationship with her stepfather, Ray Yang, and openly refers to him as her "daddy."

13. Sandie has a good, close relationships with her step-siblings, Tara and Joshua.

14. Ray Yang has a large, extended family within the Minneapolis–Saint Paul metropolitan area. The family has welcomed and nurtured Sandie. Sandie is considered by them to be a full member in the Yang family. Sandie enjoys playing with the other children in the Yang family. Sandie considers those children to be her "cousins."

15. Sandie is a second-grader at Prosperity Heights Elementary School in Saint Paul, Minnesota. Sandie has numerous friends and playmates at the school. Sandie enjoys her school so much that respondent and Ray Yang, after having moved between residences within Saint Paul, allow her to attend there even though another elementary school is nearer to their home.

16. Sandie is active outside of school. Sandie takes swimming lessons and dance lessons. Sandie has taken summer school classes to learn about her Hmong heritage.

17. Sandie speaks fluent English, remembers little French, and does not speak the dialect of Hmong spoken by petitioner.

18. The court credits the testimony of Dr. Mary Kenning that Sandie is settled and happy in her neighborhood, her school, her immediate family, and her extended family.

19. The court does not credit Dr. Kenning's testimony that Sandie would suffer permanent psychological injury if she were to return to France.

20. Petitioner has never abused Sandie physically or emotionally.

21. Not later than October 1999, petitioner discovered that respondent and Sandie were living in Saint Paul, Minnesota.

22. Not later than February 2002, petitioner discovered respondent's Saint Paul address.

23. Petitioner filed an application under the Hague Convention for the return of Sandie on November 8, 2002.

24. Petitioner commenced the present action on June 12, 2003.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties. The court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 11603(a).

2. Petitioner has the burden to prove by a preponderance of the evidence that Sandie was wrongfully removed within the meaning of the Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), done at The Hague on October 25, 1980. 42 U.S.C. § 11603(e)(1)(A).

3. Under the Hague Convention, the removal of a child is wrongful where "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention." Hague Convention, art. 3.

4. "Rights of custody" include "the right to determine the child's place of residence." Hague Convention, art. 5.

5. By stipulation of the parties, Sandie was habitually a resident in France immediately prior to her removal by respondent.

6. Petitioner and respondent had joint legal custody of Sandie under French law at the time of her removal.

7. Legal custody, under French law, includes the right to determine the child's place of residence.

8. Petitioner has proved by a preponderance of the evidence that respondent wrongfully removed Sandie from France within the meaning of the Hague Convention. The removal of a child is wrongful when (1) it is done in breach of the custody rights of the parent left behind and (2) the parent left behind was actually exercising custody rights immediately before the removal. Hague Convention, art. 3; *Silverman v. Silverman*, 338 F.3d 886, 897 (8th Cir.2003). Respondent breached petitioner's right to joint legal custody of Sandie because respondent did not notify petitioner or seek leave of the French court prior to bringing Sandie to the United States. Further, the evidence establishes that petitioner exercised his custody rights by visiting Sandie with reasonable frequency prior to Sandie's removal.

9. The Hague Convention affords respondent several affirmative defenses. *See* Hague Convention, art. 12, 13 & 20. Respondent asserts three defenses enumerated in the Convention and one additional defense.

10. Respondent contends that Sandie "has attained an age and degree of maturity at which it is appropriate to take account of [her] views." Hague Convention, art. 13. Respondent has the burden to prove this defense by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B).

■ 11. Respondent has not proved by a preponderance of the evidence that Sandie, age seven, is of such age and maturity that it would be appropriate for the court to give weight to her preferences.

12. Respondent contends that "there is a grave risk that [Sandie's] return would expose [her] to . . . psychological harm or otherwise place [her] in an intolerable situation." Hague Convention, art. 13(b). Respondent has the burden to prove this defense by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A).

■ 13. Respondent has not proved by clear and convincing evidence that Sandie's return to France would expose her to a grave risk of psychological harm. "Under Article 13(b), 'grave' means a more than serious risk." *Danaipour v. McLarey*, 286 F.3d 1, 14 (1st Cir.2002). Respondent has not shown that petitioner is abusive toward Sandie or that conditions in which she would live in France would cause any psychological harm. Likewise there is no evidence that Sandie's accommodations in France would place her in an intolerable situation.

14. Respondent contends that the court may not order Sandie's return to France because the court must consider her "best interests." Respondent's argument has no support in the Convention or the cases interpreting it. *See Holder v. Holder*, 305 F.3d 854, 869 (9th Cir.2002) ("wrongful removal" determination, as opposed to "best interests of the child," does not permit "ad hoc determination or a balance of the equities") (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1073 n. 10 (9th Cir.2001)); *see also Diorinou v. Mezitis*, 237 F.3d 133, 145 (2d Cir.2001) (Article 13 defenses do not invite courts to litigate or relitigate child's best interests); *accord Walsh v. Walsh*, 221 F.3d 204, 218–19 (1st Cir.2000); *Friedrich v. Friedrich*, 78 F.3d 1060, 1068 (6th Cir.1996); *Nunez–Escudero v. Tice-*

*Menley*, 58 F.3d 374, 378 (8th Cir.1995) (district court instructed "not to consider evidence relevant to custody or the best interests of the child" on remand as immaterial to Article 13 defense).

15. Respondent asserts that more than one year has elapsed since the wrongful removal and that Sandie has become settled in her new environment. *See* Hague Convention, art. 12. Respondent has the burden to prove this defense by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B).

16. By stipulation of the parties, Sandie was removed from France more than one year prior to the commencement of the present action.

■ 17. "In determining whether the 'settled' exception applies, the court is permitted to consider any relevant factor, including the particular circumstances surrounding the child's living environment." *Anderson v. Acree*, 250 F.Supp.2d 876, 881 (S.D.Ohio 2002) (citing *Lops v. Lops*, 140 F.3d 927, 946 (11th Cir.1998)). Those factors include "the age of the child, the stability of the child's residence in the new environment, whether the child attends school or day care consistently, whether the child attends church regularly, the stability of the mother's employment or other means of support, whether the child has friends and relatives in the area, and to what extent the child has maintained any ties to the country of habitual residence." *In re Koc*, 181 F.Supp.2d 136, 152 (E.D.N.Y.2001).

■ 18. Respondent has established by a preponderance of the evidence that Sandie is settled in her new environment. The evidence establishes that Sandie has spent more than half her young life in Saint Paul. She has lived there continuously since her arrival in the United States. She has only vague memories of France. Sandie attends school regularly and thrives in her school environment. She

has attended only one school. Sandie also participates in extra-curricular and cultural activities. Respondent is currently studying to become a nurse practitioner. Sandie is also supported by her stepfather, Ray Yang, who has steady work servicing office machinery. Sandie has numerous relatives in the Minneapolis–Saint Paul metropolitan area. They have welcomed Sandie, and Sandie feels welcome among them. Sandie has no apparent ties to France, save the fact that petitioner resides there.

### ORDER FOR JUDGMENT

Based on the foregoing findings of fact and conclusions of law, the court orders that judgment be entered in favor of respondent, and the child subject to the petition remain with respondent in the United States.

LET JUDGMENT BE ENTERED ACCORDINGLY.